IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JIMMY LEWIS,

               Petitioner,

        vs.

MICHAEL MARTEL, Warden, Mule
Creek State Prison,

             Respondent.

No. 2:10-cv-0422-JKS

MEMORANDUM DECISION

Jimmy Lee Lewis, a state prisoner appearing *pro se*, filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254.  Lewis is currently in the custody of the California Department of Corrections and Rehabilitation, incarcerated at the Mule Creek State Prison, Ione, California. Respondent has answered, and Lewis has not replied.

## I.  BACKGROUND/PRIOR PROCEEDINGS

In October 2006, Lewis was convicted by a San Joaquin County Superior Court jury of the following crimes: (1) first degree murder in violation of California Penal Code § 187; (2) shooting at an occupied motor vehicle in violation of California Penal Code § 246; (3) carrying a concealed weapon in violation of California Penal Code § 12025(a)(1); (4) evading a police officer in violation of California Penal Code § 2800.2; and (5) unlawful possession of ammunition in violation of California Penal Code § 12316(b)(1).  The San Joaquin County Superior Court sentenced Lewis to fifty-two years and eight months in state prison, including twenty-five year to life on the murder charge and a consecutive sentence of twenty-five years to life for the firearm enhancement.  On September 16, 2008, the California Court of Appeal, Third District, affirmed Lewis's conviction and sentence in an unpublished reasoned decision, *People*

*v. Lewis*, No. C054592, 2008 WL 4216099 (Cal. Ct. App. Sept. 16, 2008), and the California

Supreme Court denied review on November 19, 2008.

Lewis filed his first Petition for review in this Court on February 18, 2010.  Doc. No. 1.

On April 23, 2010, this Court dismissed Lewis's first Petition with leave to amend.  Doc. No. 8.

On August 2, 2010, Lewis filed his first Amended Petition for review in this Court.  Respondent

moved to dismiss the first Amended Petition on September 22, 2010, on the grounds that two of

the four claims were unexhausted.  Doc. No. 17.  Lewis responded to the motion on November

29, 2010, stating that he wished to strike the two unexhausted claims (claims three and four) and

proceed on claims one and two.  Doc. No. 23.  This Court construed Lewis's motion as a second

Amended Petition, allowed Lewis to delete claims three and four, and ordered Respondent to file

a response.  Doc. No. 25.

The California Court of Appeal summarized the facts supporting Lewis's conviction as

follows:

> Defendant Jimmy Lewis was convicted of murder, shooting at an occupied motor
> vehicle, and other crimes connected to the killing of Marcus Inman.  The evidence
> showed that on December 15, 2004, a teal Thunderbird pulled into the parking lot at
> the P & M Apartments and the passenger, later identified as [Lewis], got out and shot
> several times at Inman, who was riding a motorized scooter.  Inman died from a
> bullet that struck him in the back and ended up in his heart.

Lewis, 2008 WL 4216099 at *1.

## II.  ISSUES/GROUNDS RAISED/DEFENSES

In his second Amended Petition, Lewis raises two issues: (1) that the trial court prevented

Lewis from presenting a complete defense by not allowing him to introduce third party

culpability evidence concerning Carlos Cortez Dominguez, the owner of a Thunderbird similar to

Lewis's Thunderbird, which a witness saw on the shoulder of the highway near the scene of the

crime a few days after the victim was shot; and (2) that the trial court violated Lewis's constitutional rights by allowing the prosecution to introduce evidence that he held a shotgun to his wife's head twenty-two years earlier.  Respondent does not assert any affirmative defenses. *See* Rules Governing Section 2254 Cases in the U.S. Dist. Courts, Rule 5(b) (2011) ("The answer must . . . state whether any claim in the petition is barred by a failure to exhaust state remedies, a procedural bar, non-retroactivity, or a statute of limitations.").

### III.  STANDARD OF REVIEW

The standard of review governing federal habeas petitions is contained in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), which applies to all federal habeas petitions filed after the statute's enactment in April 1996.  *See Lindh v. Murphy*, 521 U.S. 320, 326 (1997) (noting that Congress's intent was for AEDPA to apply to cases that were filed after the statute's enactment).  Because Lewis filed his Petition after the effective date of the statute, its provisions apply to his case.

Under AEDPA, this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2).

A state-court decision is "contrary" to federal law "if the state court applies a rule that contradicts the governing law set forth" in controlling, Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result.  *Williams v. Taylor*, 529 U.S. 362,

405-06 (2000).  The Supreme Court has noted that "[a]voiding these pitfalls does not require citation of our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."  *Early v. Packer*, 537 U.S. 3, 8 (2002).

When a claim falls under the "unreasonable application" prong, a state court's application of Supreme Court precedent must be "objectively unreasonable," not just "incorrect or erroneous."  *Lockyer v. Andrede*, 538 U.S. 63, 75 (2003) (citing *Williams*, 529 U.S. at 409-10, 412).  The Supreme Court has made clear that the "objectively unreasonable" standard is "a substantially higher threshold" than simply believing that the state-court determination was incorrect.  *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams,* 529 U.S. at 410).  "AEDPA thus imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt."  *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010) (internal quotation marks and citations omitted).  "[A]bsent a specific constitutional violation, federal habeas corpus review of trial error is limited to whether the error 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"  *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 642, 643 (1974)).  In a federal habeas proceeding, the standard under which this Court must assess the prejudicial impact of constitutional error in a state court criminal trial is whether the error had a "substantial and injurious effect" or influence in determining the outcome.  *Fry v. Pliler*, 551 U.S. 112, 121 (2007).  Because "[s]tate court judgments of conviction and sentence carry a presumption of finality and legality," the petitioner has the burden of showing by a

preponderance of the evidence that he or she merits habeas relief. *Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002).

The Supreme Court recently underscored the magnitude of the deference required:

> As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. *Cf. Felker v. Turpin,* 518 U.S. 651, 664, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244). *It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther.* Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Jackson v. Virginia,* 443 U.S. 307, 332, n.5, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Harrington v. Richter*, 131 S. Ct. 770, 786-87 (2011) (emphasis added).

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412. The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts. *See Early*, 537 U.S. at 10 (explaining that clearly established federal law under must be based on Federal Constitutional grounds). Where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'" *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations in original) (citation omitted); *see also Wright v. Van Patten*, 552 U.S. 120, 126 (2008) (per curiam) (stating that when no Supreme Court case gives a "clear answer to the question presented," then the state-

court decision cannot be contrary to or an unreasonable application of clearly established federal law); *Kessee v. Mendoza-Powers*, 574 F.3d 675, 678-79 (9th Cir. 2009); *Moses v. Payne*, 555 F.3d 742, 753-54 (9th Cir. 2009) (explaining the difference between principles enunciated by the Supreme Court that are directly applicable to the case and principles that must be modified in order to be applied to the case; the former are clearly established precedent for purposes of § 2254(d)(1), the latter are not).  Accordingly, "it is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established" by the Supreme Court.  *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009).

In applying these standards in habeas review, this Court reviews the "last reasoned decision" by the state court.  *Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)).  State appellate court decisions that summarily affirm a lower court's opinion without explanation are presumed to have adopted the reasoning of the lower court.  *See Richter*, 131 S. Ct. at 784 ("As every Court of Appeals to consider the issue has recognized, determining whether a states court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning."); *Ylst v. Nunnemaker*, 501 U.S. 797, 802-03 (1991) ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground.").  This Court gives the presumed decision of the state court the same AEDPA deference that it would give a reasoned decision of the state court.  *See Richter*, 131 S. Ct. at 784-85 (rejecting the argument that a summary disposition was not entitled to § 2254(d) deference).

Under AEDPA, the state court's findings of fact are presumed to be correct unless the

petitioner rebuts this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *see*

*also Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) ("Factual determinations by state courts are

presumed correct absent clear and convincing evidence to the contrary . . . ." (citing 28 U.S.C. §

2254(e)(1)).  This presumption applies to state-trial courts and appellate courts alike.  *See*

*Stevenson v. Lewis*, 384 F.3d 1069, 1072 (9th Cir. 2004) ("Stevenson does not address these

factual findings, let alone challenge them with clear and convincing evidence.  Accordingly, we

presume them to be correct." (citing 28 U.S.C. § 2254(e)(1); *Pollard v. Galaza*, 290 F.3d 1030,

1035 (9th Cir. 2002))).

A state court is not required to give reasons before its decision can be deemed to be

"adjudicated on the merits."  *Richter*, 131 S. Ct. at 784-85 (2011)*.*  When there is no reasoned

state-court decision denying an issue presented to the state, "it may be presumed that the state

court adjudicated the claim on the merits in the absence of any indication or state law procedural

principles to the contrary."  *Id.* (citing *Harris v. Reed*, 489 U.S. 255, 265 (1989)).  However,

"[t]he presumption may be overcome when there is reason to think some other explanation for

the state court's decision is more likely."  *Id.* at 785 (citing *Ylst*, 501 U.S. at 803).  Where the

presumption applies, this Court must perform an independent review of the record to ascertain

whether the state-court decision was "objectively unreasonable."  *Reynoso v. Giurbino*, 462 F.3d

1099, 1109 (9th Cir. 2006) (quoting *Pham v. Terhune*, 400 F.3d 740, 742 (9th Cir. 2005) (per

curiam)).  In conducting an independent review of the record, this Court presumes that the

relevant state-court decision rested on federal grounds.  *See Coleman v. Thompson*, 501 U.S. 722,

740 (1991 ("The presumption at present applies only when it fairly appears that a state court

judgment rested primarily on federal law or was interwoven with federal law, that is, in those cases where a federal court has good reason to question whether there is an independent and adequate state ground for the decision."); *see also Harris*, 489 U.S. at 263.

Moreover, this Court gives that presumed decision the same deference as a reasoned decision. *Richter*, 131 S. Ct. at 784-85,  The scope of this review is for clear error of the state court ruling on the petition:

> [A]lthough we cannot undertake our review by analyzing the basis for the state court's decision, we can view it through the "objectively reasonable" lens ground by *Williams*. . . . Federal habeas review is not *de novo* when the state court does not supply reasoning for its decision, but an independent review of the record is required to determine whether the state court clearly erred in its application of controlling federal law.  Only by that examination may we determine whether the state court's decision was objectively reasonable.

*Delgado v. Lewis* (*Delgado II*), 223 F.3d 976, 982 (9th Cir. 2000).  "[A]lthough we independently review the record, we still defer to the state court's ultimate decision." *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002).

Lewis has not replied to the answer.  28 U.S.C. § 2248 provides:

> The allegations of a return to the writ of habeas corpus or of an answer to an order to show cause in a habeas corpus proceeding, if not traversed, shall be accepted as true except to the extent that the judge finds from the evidence that they are not true.

Under § 2248, where there is no denial of the Respondent's allegations in the answer, or the denial is merely formal and unsupported by an evidentiary basis, the court must accept Respondent's allegations. *Carlson v. Landon*, 342 U.S. 524, 530 (1952).  Where a petitioner has not disputed a contention in the response and it does not appear from the record before the court that the contention is erroneous, the court may accept that contention. *Phillips v. Pitchess*, 451 F.2d 913, 919 (9th Cir. 1971).

IV.  DISCUSSION

A.  Issue 1: Exclusion of Third Party Culpability Evidence

Lewis contends that the trial court prevented him from presenting a complete defense by not allowing him to introduce third party culpability evidence.  Specifically, Lewis claims that the trial court erred when it excluded evidence the defense sought to introduce concerning Carlos Cortez Dominguez, the owner of a Thunderbird similar to Lewis's Thunderbird, which a witness saw on the shoulder of the highway near the scene of the crime a few days after the victim was shot.  Lewis claims the exclusion of this evidence violated his right "to a meaningful opportunity to present a complete defense and a fair trial."  Doc. No. 1 at 21; Doc No. 23 at 5.

1.  State Court Decisions

At trial, during the "prosecution's case-in-chief, Eric Goodman, the owner of a transmission/auto repair business across the street from the P & M Apartments," explained during his testimony that on the night of the murder, December 15, 2004, he heard "several 'loud pops' that appeared to come from the apartments," and also that he "saw 'kind of a teal green colored mid 90's T-bird pulling out of the P & M Apartments" after hearing the gun shots. *People v. Lewis*, No. C054592, 2008 WL 4216099, at *1 (Cal. Ct. App. Sept. 16. 2008). Goodman testified further that a few days after hearing the shooting, "he called the sheriff's office because he saw 'a car sitting on the side of road in the shoulder that looked like the car that [he] had seen' the day of the shooting," but he stated that he could not remember if he had reported the license plate number.  *Id.*  Following Goodman's testimony, "an investigator with the San Joaquin County District Attorney's office testified on cross-examination that Goodman did report the license plate number of the car."  *Id.*

9

Later, also during the prosecution's case-in-chief, Lewis's "defense counsel and the court put on the record a prior discussion in chambers regarding additional testimony [Lewis] had wanted to elicit from Investigator Melgoza regarding the second teal Thunderbird." *Id.* Melgoza had apparently done some research concerning the other teal Thunderbird Goodman reported seeing on the side of the road "and discovered that the registered owner of that car had been convicted of selling heroin, had used two false addresses in Stockton, had applied for two false driver's licenses in Stockton, and had been deported but returned to the country illegally." *Id.* Lewis's counsel "also wanted to elicit evidence that Inman had methamphetamine in his body" at the time of his death, and sought to introduce this "additional testimony on a theory of third party culpability." *Id.*

On appeal to the California Court of Appeals, Lewis argued that "the trial court committed reversible error and violated his rights under the Sixth and Fourteenth Amendments by precluding him from eliciting . . . additional evidence regarding the owner of the teal green Thunderbird." *Id.* In rejecting this claim, the California Court of Appeals held that the trial court properly excluded the defense from introducing this evidence "on the ground [that] it was too speculative." *Id.* The court of appeals noted that "[e]vidence that someone other than the defendant may have committed the crime with which the defendant is charged is admissible if it is capable of raising a reasonable doubt of the defendant's guilt," but that "[t]his standard . . . does not require the indiscriminate admission of any evidence offered to prove third-party culpability." *Id.* (internal quotation marks and citations omitted). The court explained:

> The evidence must meet minimum standards of relevance: 'evidence of mere motive or opportunity to commit the crime in another person, without more, will not suffice to raise a reasonable doubt about a defendant's guilt: there must be direct or circumstantial evidence linking the third person to the actual perpetration of the

crime.' " (Ibid.) "[C]ourts should simply treat third-party culpability evidence like
any other evidence: if relevant it is admissible [citation] unless its probative value is
substantially outweighed by the risk of undue delay, prejudice, or confusion." (People
v. Hall (1986) 41 Cal.3d 826 834.)

*Id.*

  According to Lewis, the testimony of Melgoza was relevant and should have been

admitted because his investigation revealed that a felon, convicted drug dealer, and alien owned a

car similar to the one seen by Goodman, and this, combined with the fact that the victim had

methamphetamine in his body at the time of his death, raised a reasonable doubt as to Lewis's

guilt by suggesting that the owner of the other teal Thunderbird was actually the perpetrator who

shot the victim.  *Id.* at *2.

  In rejecting this argument, the California Court of Appeals noted that it agreed with the

trial court "that the link between the otherwise unidentified owner of this other teal green

Thunderbird and Inman was 'too speculative to be relevant.'" *Id.* (citation omitted).  It explained

that evidence "is relevant if it has any tendency in reason to prove or disprove any disputed fact

that is of consequence to the determination of this action," *id.* (citing Cal. Evid. Code § 210), but

that "evidence which produces only *speculative* inferences is *irrelevant,*" *id.* (citing *People v.

Babbitt*, 755 P.2d 253, 263 (Cal. 1998)).  The court added, "that a similar car owned by a person

with a conviction for selling heroin was seen by a witness to the shooting several days later does

not, without more, have any tendency *in reason* to prove that the owner of this other car was

Inman's shooter and thereby disprove that [Lewis] was the perpetrator."  *Id.*  Accordingly, the

California Court of Appeal held that the trial court did not err in excluding the evidence

concerning the other teal thunderbird and that Lewis's constitutional rights were not violated by

11

this exclusion because "any connection between the owner of the other Thunderbird and [the victim's] shooting [was] nothing more than sheer speculation."  *Id.*

2.  Analysis

To the extent that Lewis raises an issue of the proper application of state law, it is beyond the purview of this Court in a federal habeas proceeding.  *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) ("The short of the matter is that the responsibility for assuring that the constitutionally adequate procedures governing California's parole system are properly applied rests with California courts, and is no part of the Ninth Circuit's business.").  It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (it is presumed that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002); *see also Engle v. Isaac*, 456 U.S. 107, 119 (1982) (challenging the correctness of the application of state law does not allege a deprivation of federal rights sufficient for habeas relief); *Bell v. Cone,* 543 U.S. 447, 455 (2005) (a federal court may not lightly presume that a state court failed to apply its own law). "[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey,* 546 U.S. 74, 76 (2005); *see West v. AT&T,* 311 U.S. 223, 236 (1940) ("[T]he highest court of the state is the final arbiter of what is state law.  When it has spoken, its pronouncement is to be accepted by federal courts as defining state law . . . .").

12

The Supreme Court has acknowledged its "traditional reluctance to impose constitutional restraints on ordinary evidentiary rulings by state trial courts." *Crane v. Kentucky*, 476 U.S. 683, 689 (1986). In criminal actions, "[t]he States are free to provide such procedures as they choose, including rules of evidence, provided that none of them infringes a guarantee in the Federal Constitution." *Burgett v. Texas*, 389 U.S. 109, 113-14 (1967). The Supreme Court has made clear that federal habeas power does not allow granting relief on the basis of a belief that the state trial court incorrectly interpreted the state evidence code in ruling on the admissibility of evidence. *McGuire*, 502 U.S. at 72 (citing *Cupp v. Naughten*, 414 U.S. 141, 147 (1973); *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977); *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

Lewis's argument appears to be, however, that the exclusion of this third party culpability evidence prevented him from presenting a complete defense in violation of the Sixth and Fourteenth Amendment.[1] It is well settled that, under the Sixth Amendment, an accused has the right to present witnesses, testimony and other evidence in his defense. *See Washington v. Texas*, 388 U.S. 14, 19 (1967). Indeed, "the Constitution guarantees criminal defendants a meaningful

---

[1] On appeal to the California Court of Appeal, Lewis claimed that the exclusion of third party culpability evidence violated his Sixth and Fourteenth Amendments. Although he does not specifically state this in his Second Amended Petition to this Court, he does claim that the trial court erred in excluding the third party culpability evidence, which is essentially the same argument he made to the California Court of Appeal. Moreover, in his initial Petition to this Court, which was dismissed with leave to amend, Doc. No. 8, Lewis contends that exclusion of the third party culpability evidence violated his right "to a meaningful opportunity to present a complete defense and a fair trial." Doc. No. 1 at 21. Because prisoner *pro se* pleadings are given the benefit of liberal construction, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *Porter v. Ollison*, 620 F.3d 952, 958 (9th Cir. 2010), this Court will assume that Lewis is claiming that his right to present a complete defense was hindered by the trial court's evidentiary ruling in violation of the Sixth and Fourteenth Amendments.

opportunity to present a complete defense." *Crane*, 476 U.S. at 690 (internal quotation marks and citations omitted). However, "[t]he accused does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." *Taylor v. Illinois*, 484 U.S. 400, 409-10 (1988). States have considerable latitude under the Constitution to establish rules excluding evidence from criminal trials. *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006).

As to defense evidence offered to prove that someone else committed the crime, the Supreme Court has specifically stated that "while the Constitution . . . prohibits the exclusion of defense evidence under rules that serve no legitimate purpose . . . , well established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or [a] potential to mislead the jury." *Id.* at 326. Indeed, the Supreme Court has explained that "admission of evidence proffered by criminal defendants to show that someone else committed the crime . . . may be excluded where it does not sufficiently connect the other person to the crime, as, for example, where the evidence is speculative or remote, or does not tend to prove or disprove a material fact in issue at the defendants trial." *Id.* (citation omitted). In considering whether the exclusion of evidence violates due process, this Court must consider the probative value of the evidence on the central issue. *United States v. Cruz-Escoto*, 476 F.3d 1081, 1088 (9th Cir. 2007).

The evidence of another teal Thunderbird owned by a convicted felon and drug dealer seen by a witness five days after the shooting does not suggest that its owner was the shooter, most notably because Lewis presented no evidence connecting the owner of that car to the victim or the shooting. Without evidence which connects the owner of that second teal Thunderbird to

the crime, the fact that a similar car was seen by a witness five days later on the side of road proves or disproves nothing about the owner of that car.  The trial court was well within its discretion to exclude the evidence of the other teal Thunderbird since it suggesting nothing about the owner of that second car and the shooting.  Moreover, the California Court of Appeal could have reasonably concluded that Lewis's right to present a complete defense was not violated by the trial court's ruling since the appellate court concluded that "the link between the otherwise unidentified owner of this other teal green Thunderbird and Inman was "too speculative to be relevant."  *Lewis*, 20008 WL 4216099 at *2.  This conclusion is not contrary to Supreme Court precedent concerning third party culpability evidence and the trial court's discretion in ruling on its admissibility.  Moreover, the California Evidence Code section relied upon by the California Court of Appeal, § 210, is almost identical to Federal Rule of Evidence 401, adopted by the Supreme Court.

Therefore, this Court cannot find that the decision of the California Court of Appeal was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); *see Williams*, 529 U.S. at 404-06; *see also Andrade,* 538 U.S. at 70-75 (explaining this standard).  Lewis is not entitle to relief under his first ground.

## B. Ground Two: Admission of Other Crimes Evidence

Lewis contends that his right to a fair trial was violated when the trial court allowed the prosecution to put forth evidence that he had held a shotgun to his wife's head twenty-two years earlier.

1.  State Court Decisions

At trial, Lewis's wife Neisa testified in his defense.  *Lewis*, 2008 WL 4216099 at *2.

During cross-examination by the prosecution, Neisa stated that she had never seen Lewis with

any guns.  *Id.*  The following discussion then took place:

> "Q. Did you ever see him with shotguns before?
> "A. No. Pellet gun, BB gun. Actually I have a BB gun.
> "Q. Never in your whole life did you ever see him with a shotgun?
> "A. Not, no.
> "Q. How about when you were 16?
> "A. When I was 16, not that I can recall.
> "Q. Did you make a police report when you were 16?"

*Id.*

Following this discussion, "defense counsel asked to approach the bench."  *Id.*  The

prosecutor explained that "he wanted to ask Neisa about a report she made to police when she

was 16 that defendant had kidnaped her, put a knife to her throat, put a shotgun to her head,

forced her into the backseat of a car, and raped her."  *Id.*  Lewis's defense counsel objected to

this line of questioning on the "ground that he never asked her anything about guns ... at any

point during direct."  *Id.* (internal quotation marks omitted).  The prosecution made clear that it

wanted to impeach Neisa's credibility, and the trial court concluded that the line of questioning

was proper because it placed Neisa's "credibility into issue but also rehabilitate[d] [her] sister,

whom Neisa had criticized in her testimony on direct examination."  *Id.* (internal quotation marks

omitted).  Lewis's counsel objected to the trial court's ruling and argued that, nevertheless, the

prosecutions "inquiry into the prior incident should be limited."  *Id.*  The court agreed, explaining

that it would preclude questions regarding the knife "because the only issue here is the gun." *Id.*

The Court of Appeals summarized the trial court's ruling that allowed the questions concerning the prior shotgun incident as follows:

> The court suggested that the prosecutor limit his question to whether Neisa had "complain[ed] once before the defendant had a shotgun at [her]." Defense counsel argued the question should be limited to whether she had "ma[d]e a report when [she was] 16 where the defendant had a gun in [her] presence." The court strongly disagreed, saying the prosecutor was "entitled to ask her, did [she] ever report that the defendant pointed a shotgun at [her]. That is reasonable." The court emphasized that the incident was "clearly primary to the issue about the sister's [credibility]. She is trying to put the sister in a bad light. And that was the main thrust of her testimony. I do agree if she hadn't said the stuff about her sister on direct, then the D.A. going, she saw him with a gun is out of the scope. He put all of the stuff in about her sister and no reason for complaining about the relationship. And now you find out she herself said the defendant raped her and held a shotgun to her. I will allow the shotgun. And I will limit it to just the shotgun unless she keeps insisting it is all a frame job.

*Id.*

At this point Neisa was called back to the witness stand, and the "prosecutor asked her if, when she was 16, she ma[d]e a report to the Sheriff's Department that this defendant had held a shotgun to [her] head." *Id.* at *3 (internal quotation marks omitted). She replied "yes" to this question. *Id.*

On appeal to the California Court of Appeals, Lewis claimed that "the trial court erred and violated his right to a fair trial under the due process clause of the Fourteenth Amendment by admitting this evidence." *Id.* Specifically, Lewis argued that the trial court "erroneously admitted prior crime evidence solely to corroborate and bolster" Neisa's sister's "credibility." *Id.* In rejecting this argument, the court of appeals noted that the "evidence that Neisa had previously reported to authorities that [Lewis] held a shotgun to her head was highly relevant to impeach Neisa's testimony that she had '[n]ever in [her] whole life ... see[n] him with a shotgun.'" *Id.* Lewis countered that "there was no material issue concerning [his] possession of firearms and

ammunition which made Neisa's having seen him in possession of weapons irrelevant," but the court disagreed, explaining:

> Evan assuming that is true, however, it makes no difference to the issue before us. At most, any such lack of relevance would have given defense counsel a legitimate basis for objecting to the prosecutor's questions at the outset about whether she had ever seen defendant with a gun. Defense counsel did not do so, however, and once Neisa was allowed to testify without objection that she had never in her life seen [Lewis] with a gun, the prosecutor was entitled to impeach the credibility of that testimony by asking her about an incident in which she had reported seeing defendant with a gun—one that was pointed at her head.

*Id.*

Lewis also argued that the "evidence of the shotgun incident should have been excluded as unduly prejudicial due to its 'remoteness, lack of significant probative value, and inflammatory, prejudicial nature.'" *Id.* But the court of appeals disagreed, noting the trial court did not abuse its discretion allowing the shotgun line of questioning. *Id.* The court explained:

> While remoteness is a material factor to consider in determining whether to admit evidence of a prior felony conviction *for the purpose of impeaching the person to whom the conviction belongs*, (see *People v. Burns* (1987) 189 Cal.App.3d 734, 736-739), remoteness is not particularly material in this situation, where the prosecutor sought to impeach Neisa's assertion that she had never seen defendant with a shotgun with evidence that Neisa had previously reported to authorities that [Lewis] had held a shotgun to her head. That the incident occurred 22 years earlier did not materially reduce the impeachment value of the evidence.

*Id.*

As to the probative value of the evidence for impeachment purposes, the California Court of Appeal noted that "it was significant" because "Neisa testified she had never in her life seen the defendant with a gun, let alone a shotgun, when, in fact, she had once reported to authorities that the defendant not only had a shotgun, but held it to her head—an incident the vast majority of people will likely ever forget." *Id.* The court concluded: "this report was *extremely* probative

of whether Neisa was truthful as a witness." *Id.* Finally, concerning the prejudicial nature of the evidence, the court noted that while Neisa's admission that Lewis had held a "shotgun to her head she was 16 could have been damaging to" to Lewis, "to the extent the jury believed Neisa was telling the truth . . . , [Lewis] has not persuaded us that the danger of undue prejudice substantially outweighed the probative value of the evidence for impeachment purposes." *Id.* at *4 (citing Cal. Evid. Code § 352). The California Court of Appeal therefore found "no error or violation of [Lewis's] constitutional rights in the admission of the evidence." *Id.*

    2. Analysis

    Again, as in Lewis's first ground, to the extent that Lewis is raising an issue of the proper application of state law concerning the trial court's admission of the shotgun evidence, it is beyond the purview of this Court and not cognizable in a federal habeas proceeding. *See Swarthout*, 131 S. Ct. at 863 ("The short of the matter is that the responsibility for assuring that the constitutionally adequate procedures governing California's parole system are properly applied rests with California courts, and is no part of the Ninth Circuit's business."); *c.f.*, *McGuire*, 502 U.S. at 68 ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Richey*, 546 U.S. at 76 ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." (citation omitted)). It appears, however, that in his Second Amended Petition to this Court, Lewis is making the same claim he made to the California Court of Appeal—that the trial court's admission of the shotgun

evidence violated his right to a fair trial under the due process clause of the Fourteenth Amendment.[2] *Lewis*, 2008 WL 4216099 at *3.

As noted *supra* in Lewis's first ground, the Supreme Court has acknowledged its "traditional reluctance to impose constitutional restraints on ordinary evidentiary rulings by state trial courts." *Crane*, 476 U.S. at 689. Indeed, "the Due Process Clause does not permit the federal courts to engage in a finely tuned review of the wisdom of state evidentiary rules." *McGuire*, 502 U.S. at 72 (quoting *Marshall v. Lonberger*, 459 U.S. 422, 438 n.6 (1983)). In criminal actions, "[t]he States are free to provide such procedures as they choose, including rules of evidence, provided that none of them infringes a guarantee in Federal Constitution." *Burgett v.* 389 U.S. at 113-14. The Supreme Court has made clear that federal habeas power does not allow granting relief on the basis of a belief that the state trial court incorrectly interpreted the state evidence code in ruling on the admissibility of evidence. *McGuire*, 502 U.S. at 72 (citing *Cupp v. Naughten*, 414 U.S. 141, 147 (1973); *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977); *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

In fact, the Supreme Court has never held that the admission of uncharged other crimes evidence is a violation of due process. *McGuire*, 502 U.S. at 70 ("[W]e need not explore further the apparent assumption of the Court of Appeals that it is a violation of the due process guaranteed by the Fourteenth Amendment for evidence that is not relevant to be received in a

---

[2] In both his initial Petition to this Court, and his Second Amended Petition, Lewis claims only that the twenty-two year old shotgun incident should not have been allowed into evidence because the charge was dismissed. Because prisoner *pro se* pleadings are given the benefit of liberal construction, *Erickson*, 551 U.S. at 94 (per curiam); *Porter*, 620 F.3d at 958, this Court will assume that Lewis is making the same claim on this issue that he did to the California Court of Appeal—that the admission of this evidence violated his right to due process under the Fourteenth Amendment.

criminal trial.").  The Supreme Court "has held on numerous occasions that it is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court."  *Knowles*, 556 U.S. at 122.  Accordingly, the California Court of Appeals decision—which ruled that the state trial court did not abuse its discretion by allowing the prosecution to introduce evidence concerning the prior shotgun incident—cannot be contrary to controlling Supreme Court precedent.

Moreover, although the Ninth Circuit has suggested that an abuse of discretion may also amount to a constitutional violation, *Schell v. Witek*, 218 F.3d 1017, 1025 (9th Cir. 2000) (en banc), the Supreme Court has never held that abuse of discretion is an appropriate basis for granting federal habeas relief.  Indeed, quite to the contrary, the Supreme Court has suggested that, while abuse of discretion is an appropriate standard on direct review, in a federal habeas proceeding it is not.  *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010) ("It is not even whether it was an abuse of discretion for her to have done so—the applicable standard on direct review.  The question under AEDPA is instead whether the determination of the Michigan Supreme Court that there was no abuse of discretion was "an unreasonable application of . . . clearly established Federal law." (citing 28 U.S.C. § 2254(d)(1))).

Accordingly, this Court cannot say that the decision of the California Court of Appeals was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28

U.S.C. § 2254(d); *see Williams*, 529 U.S. at 404-06; *see also Andrade,* 538 U.S. at 70-75

(explaining this standard).  Lewis is not entitle to relief under his second ground.

V. CONCLUSION

Lewis is not entitled to relief.

**IT IS THEREFORE ORDERED THAT** the Second Amended Petition under 28

U.S.C. § 2254 for Writ of Habeas Corpus at Docket No. 23  is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of

Appealability.  28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705 (2004) ("To obtain a

certificate of appealability a prisoner must 'demonstrat[e] that jurists of reason could disagree

with the district court's  resolution of his constitutional claims or that jurists could conclude the

issues presented are adequate to deserve encouragement to proceed further.'"  (quoting *Miller-El*

*v. Cockrell*, 537 U.S. 307, 327 (2003))).  Any further request for a Certificate of Appealability

must be addressed to the Court of Appeals.  *See* Fed. R. App. P. 22(b); Ninth Circuit R. 22-1.

The Clerk of the Court is to enter judgment accordingly.

Dated: April 23, 2012

      /s/ James K. Singleton, Jr.      

JAMES K. SINGLETON, JR.

United States District Judge
